ARDEN CHEMICAL COMPANY, Plaintiff and Appellee, *v.* PORTO RICO DRUG CO., INC., Defendant; NATIONAL SURETY COMPANY, Intervener and Appellant.

No. 6014. Decided. April 25, 1934.

*Besosa & Besosa* for appellant.  *E. B. Wilcox* for appellee.

Mr. Justice Hutchison delivered the opinion of the court.

In disposing of this case we said:

"Intervener now appeals from an adverse judgment and says that the district court erred in its failure to distinguish between a bond to dissolve an attachment and the forthcoming or delivery bond, and in treating the bond in question as if it had been executed for the purpose of dissolving the attachment.

"Appellant in its statement of facts says that the Porto Rico Drug Co. delivered to the receiver appointed by the Federal Court all of its assets including the attached property left in its possession upon execution of the delivery bond. The brief makes no reference to any page of the record in support of this statement. Later, in the course of argument, appellant says that 'in accordance with the evidence' the District Court of San Juan had named a receiver and had taken possession of all the property of the Porto Rico Drug Company. In this connection, reference is made to an order said to have been entered in 'Civil case number 2548, *Antonio Canals et al.* vs. *P. R. Drug Company,* District Court of San Juan', whereby (as transcribed in the brief) the receiver of the Insular District Court was directed to deliver to the receiver named by the Federal District Court the property of the Porto Rico Drug Company. No reference is made to any page or portion of the record in the instant case. Beyond this there is nothing, even in the brief for appellant, to show that the perfumes and patent medicines attached by plaintiff herein and left in the possession of the Porto Rico Drug Company were ever delivered to either of the two receivers."

Later, in the said opinion, we said that there was nothing in the brief for appellant to show that it had been prejudiced by the failure of the district judge to distinguish between the bond contemplated by section 15 of the Act to secure the effectiveness of judgments (Comp. Stat. 1911, section 5247) and the bond contemplated by section 10 of that act.

The first ground of appellant's motion for rehearing is that our previous opinion draws no distinction between the two kinds of bonds provided for by the Act to secure the effectiveness of judgments and especially by sections 10 and 15 thereof. In that opinion we did not question appellant's theory that the bond before us was the bond contemplated by section 10 rather than the bond referred to in section 15. The *ratio decidendi* was that, in the absence of anything to show why intervener, in the circumstances of the instant case, should not have been held liable on the bond actually executed by it, any error committed by the district judge in failing to distinguish between such a bond and the bond referred to in section 15 of the act was harmless.

Appellant in its original brief said that the bond subscribed by it made it responsible solely and exclusively for the acts of the Porto Rico Drug Company "as judicial depositary and up to an amount limited by the value of the goods intrusted to it as such deposit." The motion for rehearing does not concede so much. The contention now is that the amount of the bond is not determined by the value of the attached property but may be fixed by the trial judge in the exercise of a sound discretion at a mere nominal or any other sum and that the liability of the surety is limited to such damages as plaintiff may be able to prove in the event of alienation of the attached property and after proof of such alienation, or in the event of defendant's disobedience of some order of the court. This is followed by further insistence upon appellant's theory that the Porto Rico Drug Company had delivered the attached property to a receiver named by the Federal Court in accordance with an order made by the insular district court directing such delivery.

The purpose of the bond authorized by section 10 of the act, like the purpose of the attachment, and like the purpose of the act itself as indicated by the title thereof, is to secure the effectiveness of any judgment that may be rendered in favor of plaintiff. By the express terms of section 10 the bond must cover the value of the attached property. The discretion of the court is as to the sufficiency of the bond for that purpose, not as to whether or not the amount thereof shall be sufficient to cover the value of the attached property. The bond refers to a previous request by defendant that the attached property should be placed in its custody upon the execution of a bond in the sum of $2,500.00 to cover the value of the said property. The obligation assumed by the Porto Rico Drug Company and by the National Surety Company as set forth in the bond itself was to pay to plaintiff, the Arden Chemical Company, the value of the said property up to the amount of $2,500.00, "thus securing the said Porto Rico Drug Co. as such judicial depositary of the aforesaid prop-

erty; it being understood that the said Porto Rico Drug Co. will faithfully fulfill each and every order to be made by this Hon. Court under the laws in force." This meant that defendant would produce the attached property when required; or in case of its failure to do this, either the defendant or its surety would respond to any judgment for plaintiff in an amount not to exceed the amount specified in the bond, that is to say, the value of the attached property. Upon appellant's own theory of damages arising out of defendant's alienation of the attached property or out of defendant's disobedience of an order for the redelivery of the said property, the measure of such damages would be the value of the attached property provided the judgment obtained by plaintiff exceeded such value, or the amount of the judgment if the value of the attached property exceeded such judgment.

It may be conceded, of course, that ordinarily some court order would precede the enforcement of plaintiff's claim against the surety. In the instant case, however, the surety insisted upon being made a defendant in the original action, by its answer submitted the question of its liability as a surety and proceeded to trial upon the issues so raised. A judgment by default against the original defendant had been entered long before the trial of the issue between the plaintiff and the surety company as intervener. The first document introduced in evidence by plaintiff, without objection on the part of intervener, was the bond. Practically the only question of fact before the trial judge was as to whether the attached property pursuant to an order of the Insular District Court had passed into the hands of a receiver appointed by the Federal Court. The surety company had its day in court, was overruled on every question of law submitted by it, and failed to establish the essential element of its special defense. It can not now complain that the original defendant was not shown to have disobeyed any specific order concerning the attached property or the production thereof as a prerequisite to the judgment.

Appellant now for the first time refers specifically to certain parts of the testimony of certain witnesses as tending to establish the theory of a delivery by the Porto Rico Drug Company to the receiver appointed by the Federal Court in accordance with an order of the Insular District Court. One of these witnesses said that, on appointment of the receiver in bankruptcy, the key and "everything that was there, the bankrupt estate," were delivered to him. This witness, who was or had been the president of the Porto Rico Drug Company, does not say that he delivered the key, does not say who delivered the key and does not say that the attached property was included in "all that was there, the bankrupt estate." The receiver in bankruptcy testified that he received from the District Court of San Juan all the merchandise that was "in the District Court of San Juan." From his testimony on cross-examination we take the following extract:

"Q. You say you received from the District Court of San Juan the articles which had been attached?

"A. I do not know whether they were attached. They were in the custody of the court.

"Q. Who received them from the court?

"A. I do not know.

"Q. How many attachments were pending in the district court?

"A. I do not know how many attachments, but I know that the goods belonging to The Porto Rico Drug were in the custody of the District Court of San Juan.

"Q. All of them?

"A. I do not know how they were there. I went there with Attorney Molina, and Judge Sepúlveda directed the marshal to turn over everything to me."

In the instant case, the property was attached in March 1926 and placed in the custody of the defendant in May of that year. The bankruptcy proceeding was commenced in the Federal Court in October. In the absence of anything to show a redelivery of the attached property by defendant to the marshal, the testimony just quoted falls far short of establishing a delivery of such property by the marshal to

the receiver in bankruptcy. Even if an order of the court directing the marshal to turn everything over to the receiver of the Federal Court could be construed to include attached property which had passed into the custody of defendant more than four months before the date of such order, there is nothing to show that it was so construed by the marshal or that he recovered actual possession of such property and delivered the same as a part of the bankrupt estate. In any event, we are not prepared to assume with appellant, in the absence of any citation of authority or satisfactory reason for such a hypothesis, that a surrender of the attached property without protest or objection by defendant, without notice to plaintiff, and without calling the attention of the district judge to the manner in which his order was being construed and carried out, would have relieved defendant and its surety from all liability to plaintiff.

The second ground of appellant's motion is that in our previous opinion we overlooked the fact that it was incumbent on plaintiff to establish the value of the attached property and that plaintiff adduced no evidence as to such value. Here also, appellant assumed without attempting to show that the burden was upon the plaintiff to establish the value of the attached property. It might well be argued on the other hand, that the requirement of section 10 as to a "sufficient bond, in the discretion of the court, to cover the value of the said property," necessarily contemplates at least a tentative appraisal of the property by the court and that the bond itself when introduced in evidence is a sufficient *prima facie* showing as to the value of the property. The bond introduced in evidence by plaintiff herein recites that: ". . . . Under a writ of attachment issued by this Hon. Court on March 27, 1926, in the above case against the Porto Rico Drug Co., defendant, the marshal of this court has attached patent medicines and perfumery valued at two thousand one hundred dollars." From this admission as to the valuation of the attached property at the time of the attachment coupled

with the amount of the bond estimated by the trial judge as sufficient to cover the value of such property it is a fair inference that the amount of the judgment, less than one-half of such estimate, did not exceed the actual value of the said property. In any event, as we have already pointed out, this was not originally an action or proceeding upon the bond. It was converted into such an action or proceeding by the surety company when it voluntarily appeared and requested that it be made a party defendant, filed its answer, and submitted the question of its liability on the bond, without raising any question as to the value of the attached property. In the circumstances, whatever the rule may be in an ordinary action or proceeding, we are not disposed to disturb the result upon the theory that the bond itself did not suffice to show that the value of the attached property was at least greater than the amount of the judgment.

The motion for rehearing will be denied.